**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

TIFFANY (NJ) LLC,

               Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

               Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Tiffany (NJ) LLC ("Tiffany" or "Plaintiff"), hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" (collectively "Defendants"). Defendants are promoting, selling, offering for sale and distributing goods bearing and/or using counterfeits and confusingly similar imitations of Tiffany's trademarks within this district through various Internet based e-commerce stores and interactive commercial Internet websites operating under the seller identities and domain names set forth on Schedule "A" (the "Seller IDs and Subject Domain Names"). In support of its claims, Tiffany alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), and 1125(d), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Tiffany's state law claims

because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district, through at least the Internet based e-commerce stores and interactive commercial Internet websites accessible in Florida and operating under the Seller IDs and Subject Domain Names.[1] Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFF

4.      Tiffany is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 15 Sylvan Way, Parsippany, NJ 07054. Tiffany operates boutiques throughout the world, including within this district. Tiffany is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality luxury goods under multiple world famous common law and

---

[1] Certain Defendants use their Seller IDs in tandem with electronic communication via private messaging applications and/or services in order to complete their offer and sale of counterfeit Tiffany-branded products. Specifically, consumers are able to browse listings of Tiffany-branded products online via Defendants' respective Seller IDs, ultimately directing customers to send inquiries, exchange data, and complete purchases via electronic communication with those Defendants.

federally registered trademarks, including those identified in Paragraph 15 below. Tiffany offers for sale and sells its trademarked goods within the State of Florida, including this district, and throughout the United States through its boutiques and online retail website. Defendants, through the sale and offers to sell of counterfeit and infringing Tiffany branded products are directly and unfairly competing with Tiffany's economic interests in the United States, including the State of Florida and causing Tiffany irreparable harm and damage within this jurisdiction.

5.      Like many other famous trademark owners, Tiffany suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Tiffany's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores and websites. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with the Tiffany name and associated trademarks and the destruction of the legitimate market sector in which it operates.

6.      To combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Tiffany expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, including through online marketplace platforms and social media websites, has created an environment that requires companies such as Tiffany to expend significant resources across a wide spectrum of efforts in order to protect both consumers and itself from confusion and the erosion of the goodwill connected to Tiffany's brand.

## THE DEFENDANTS

7.     Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of commercial Internet based e-commerce stores via Internet marketplace and social media websites operating under the Seller IDs or interactive commercial Internet websites under the Subject Domain Names.

8.     Many Defendants operate under the Seller IDs via third-party social media websites in tandem with electronic communication via private messaging applications and/or services, thereby creating an interconnected ecosystem which functions as an online marketplace operation.

9.     Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A."

10.     Defendants are the past and present controlling forces behind the sale of products bearing and/or using counterfeits and infringements of Tiffany's trademarks as described herein.

11.     Defendants directly engage in unfair competition with Tiffany by advertising, offering for sale, and/or selling goods bearing and/or using counterfeits and infringements of one or more of Tiffany's trademarks to consumers within the United States and this district through Internet based e-commerce stores or commercial Internet websites using, at least, the Seller IDs and Subject Domain Names, as well as additional names, e-commerce stores, seller identification

aliases, domain names, or websites not yet known to Tiffany. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing Tiffany branded goods into the State.

12.     Defendants have registered, established or purchased, and maintained their Seller IDs and Subject Domain Names. Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs and Subject Domain Names by providing false and/or misleading information to the Internet based e-commerce platforms and social media websites where they offer to sell and/or sell, or to their domain registrars during the registration or maintenance process related to their respective Seller ID or Subject Domain Name. Many Defendants have registered and maintained their Seller IDs and Subject Domain Names for the sole purpose of engaging in unlawful infringing and counterfeiting activities.

13.     Defendants will likely continue to register or acquire new seller identification names, domain names, aliases, e-commerce stores, social media accounts, usernames, private messaging accounts, and related payment accounts for the purpose of selling and/or offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Tiffany's trademarks unless preliminarily and permanently enjoined.

14.     Defendants' Seller IDs and Subject Domain Names, associated payment accounts, and any other alias e-commerce stores, seller identification names, usernames, private messaging accounts, and domain names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Tiffany's trademarks are essential components of Defendants' online activities and are the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Tiffany. Moreover, Defendants are using Tiffany's famous

brand name and associated trademarks to drive Internet consumer traffic to their e-commerce stores and websites operating under the Seller IDs and Subject Domain Names, thereby increasing the value of the Seller IDs and Subject Domain Names and decreasing the size and value of Tiffany's legitimate marketplace and intellectual property rights at Tiffany's expense.

## COMMON FACTUAL ALLEGATIONS

### Tiffany's Trademark Rights

15.    Tiffany is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Tiffany Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| TIFFANY & CO. | 0,023,573 | September 5, 1893 | IC 14 – Jewelry and Watches. |
| TIFFANY | 0,133,063 | July 6, 1920 | IC 14 – Jewelry for Personal Wear, Not Including Watches; and Flat and Hollow Ware Made of or Plated with Precious Metal. |
| TIFFANY & CO. | 1,228,189 | February 22, 1983 | IC 14 – Decorative Art Objects Made in Whole or in Part of Precious or Semi-Precious Metals-Namely, Figurines, Boxes, Bowls, Trays, Jewelry, Metal Wares Made in Whole or in Part of Precious or Semi-Precious Metals-Namely, Business Card Cases, Candelabras, Candlesticks, Cigar and Cigarette Boxes, Napkin Rings, and Bookmarks, Semi-Precious Stones, Natural and Cultured Pearls. |
| TIFFANY | 1,228,409 | February 22, 1983 | IC 14 – Decorative Art Objects Made in Whole or in Part of Precious or Semi-Precious Metals-Namely, Figurines, Boxes, Bowls, Trays, Jewelry, Semi-Precious Stones, and Natural and Cultured Pearls. |

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| T & CO. | 1,669,365 | December 24, 1991 | IC 14 – All Types of Jewelry Made of, or in Part of, Precious Metals and/or with Precious or Semi-Precious Stones. |
|  | 2,359,351 | June 20, 2000 | IC 14 – Jewelry; watches and clocks IC 21 – Decorative Boxes. |
|  | 2,416,795 | January 2, 2001 | IC 14 – Jewelry; watches and clocks |
| 1837 | 4,154,018 | June 5, 2012 | IC 09 – Sunglasses; compasses. IC 14 – Jewelry; cufflinks; key rings of precious metal. IC 16 – Pens; money clips. |
|  | 5,176,498 | April 4, 2017 | IC 14 – Jewelry |

The Tiffany Marks are used in connection with the manufacture and distribution of high-quality luxury goods in the categories identified above. True and correct copies of the Certificates of Registration for the Tiffany Marks are attached hereto as Composite Exhibit "1."

16.     The Tiffany Marks have been used in interstate commerce to identify and distinguish Tiffany's high-quality luxury goods for an extended period of time.

17.     The Tiffany Marks are symbols of Tiffany's quality, reputation and goodwill and have never been abandoned.

18.     The Tiffany Marks are well known and famous and have been for many years. Tiffany has expended substantial time, money and other resources developing, advertising and otherwise promoting the Tiffany Marks. The Tiffany Marks qualify as famous marks as that term is used in 15 U.S.C. § 1125(c)(1).

19.     Tiffany extensively uses, advertises, and promotes the Tiffany Marks in the United States in association with the sale of high-quality luxury goods. Tiffany has spent millions of dollars promoting the Tiffany Marks and products bearing the Tiffany Marks.

20.     As a result of Tiffany's efforts, members of the consuming public readily identify merchandise bearing or sold under the Tiffany Marks, as being high-quality luxury goods sponsored and approved by Tiffany.

21.     Accordingly, the Tiffany Marks have achieved secondary meaning among consumers as identifiers of high-quality luxury goods.

22.     Tiffany has carefully monitored and policed the use of the Tiffany Marks and has never assigned or licensed the Tiffany Marks to any of the Defendants in this matter.

23.     Genuine goods bearing and/or using the Tiffany Marks are widely legitimately advertised, promoted, and sold by Tiffany, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Tiffany's overall marketing and consumer education efforts. Thus, Tiffany expends significant monetary and other resources on Internet marketing and consumer education, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Tiffany and its authorized retailers to educate

8

consumers fairly and legitimately about the value associated with the Tiffany brand and the goods sold thereunder and the problems associated with the counterfeiting of Tiffany's trademarks.

**Defendants' Infringing Activities**

24.     Defendants are each promoting and advertising, distributing, selling, and/or offering for sale goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the Tiffany Marks (the "Counterfeit Goods") through at least the Internet based e-commerce stores or commercial Internet websites operating under the Seller IDs and Subject Domain Names. Several Defendants are also using, at least, the listings and associated images identified by the Amazon Standard Identification Numbers ("ASIN") on Schedule "A" annexed hereto. Specifically, Defendants are using the Tiffany Marks to initially attract online consumers and drive them to Defendants' e-commerce stores and websites operating under the Seller IDs and Subject Domain Names. Defendants are each using identical copies of one or more of the Tiffany Marks for different quality goods. Tiffany has used the Tiffany Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Tiffany's merchandise.

25.     Defendants' Counterfeit Goods are of a quality substantially different than that of Tiffany's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Tiffany despite Defendants' knowledge that they are without authority to use the Tiffany Marks. The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants'

goods offered for sale in or through Defendants' e-commerce stores and websites are genuine goods originating from, associated with, and/or approved by Tiffany.

26.    Defendants advertise their e-commerce stores and websites, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one e-commerce marketplace or social media website using, at least, the Seller IDs and/or, via commercial websites operating under at least the Subject Domain Names. In so doing, Defendants improperly and unlawfully use one or more of the Tiffany Marks without Tiffany's permission.

27.    As part of their overall unlawful scheme, Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of one or more of the Tiffany Marks. Specifically, Defendants are using counterfeits and infringements of Tiffany's famous name and the Tiffany Marks to make their e-commerce stores and websites selling illegal goods appear more relevant and attractive to consumers searching for both Tiffany and non-Tiffany goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Tiffany's genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Tiffany and the consuming public by (i) depriving Tiffany and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Tiffany's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Tiffany Marks, and (iii) increasing Tiffany's overall cost to market its goods and educate consumers about its brand via the Internet.

28.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Tiffany and the consuming public for Defendants' own benefit.

29.     At all times relevant hereto, Defendants have had full knowledge of Tiffany's ownership of the Tiffany Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

30.     Defendants' use of the Tiffany Marks, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Counterfeit Goods, is without Tiffany's consent or authorization.

31.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Tiffany's rights for the purpose of trading on Tiffany's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Tiffany and the consuming public will continue to be harmed.

32.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Tiffany's genuine goods and Defendants' Counterfeit Goods, which there is not.

33.     Moreover, at least Defendant Numbers 32 and 33 (collectively, the "Cybersquatting Defendants"), have registered their respective Subject Domain Names, using marks that are nearly

identical and/or confusingly similar to at least one of the Tiffany Marks (the "Cybersquatted Subject Domain Names").

34.     The Cybersquatting Defendants do not have, nor have they ever had, the right or authority to use the Tiffany Marks. Further, the Tiffany Marks have never been assigned or licensed to be used on the websites operating under the Cybersquatted Subject Domain Names.

35.     The Cybersquatting Defendants have provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Names, or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Names.

36.     The Cybersquatting Defendants have never used the Cybersquatted Subject Domain Names in connection with a bona fide offering of goods or services.

37.     The Cybersquatting Defendants have not made any bona fide non-commercial or fair use of the Tiffany Marks on a website accessible under the Cybersquatted Subject Domain Names.

38.     The Cybersquatting Defendants have intentionally incorporated the Tiffany Marks in their respective Cybersquatted Subject Domain Names to divert consumers looking for Tiffany's Internet website to their own Internet websites for commercial gain.

39.     Given the visibility of Defendants' various e-commerce stores and websites and the similarity of their actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Tiffany and the overall consumer market in which they operate because of Defendants' concurrent actions.

40.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Tiffany.

41.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing, cybersquatting, and unfairly competitive activities connected to their Seller IDs and Subject Domain Names, and any other alias e-commerce stores, seller identification names, usernames, private messaging accounts, domain names, or websites being used and/or controlled by them.

42.     Further, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Tiffany.

43.     Tiffany has no adequate remedy at law.

44.     Tiffany is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the Tiffany Marks. If Defendants' counterfeiting and infringing, cybersquatting, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Tiffany and the consuming public will continue to be harmed.

45.     The harm and damages sustained by Tiffany have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

**COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT
PURSUANT TO §32 OF THE LANHAM ACT (15 U.S.C. § 1114)**

46.     Tiffany hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

47.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Tiffany Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

48.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the Tiffany Marks. Defendants are continuously infringing and inducing others to infringe the Tiffany Marks by using one or more of them to advertise, promote, offer to sell, and sell counterfeit and infringing Tiffany branded goods.

49.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

50.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Tiffany and are unjustly enriching Defendants with profits at Tiffany's expense.

51.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the Tiffany Marks in violation of Tiffany's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

52.     Tiffany has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. §1125(a))

53.     Tiffany hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

54.     Defendants' Counterfeit Goods bearing, using, offered for sale, and sold using copies of one or more of the Tiffany Marks have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace, social media website, or interactive commercial Internet website.

55.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one of the Tiffany Marks are virtually identical in appearance to Tiffany's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

56.     Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Tiffany's detriment.

57.     Defendants have each authorized infringing uses of one or more of the Tiffany Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

58.     Additionally, Defendants are using counterfeits and infringements of one or more of the Tiffany Marks to unfairly compete with Tiffany and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Tiffany of valuable marketing and educational space online which would otherwise be available to Tiffany and (ii) reducing the visibility of Tiffany's genuine goods on the World Wide Web and across social media platforms.

59.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.     Tiffany has no adequate remedy at law and has sustained both individual and indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Tiffany will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

### COUNT III – CLAIM FOR RELIEF FOR CYBERSQUATTING PURSUANT TO §43(d) OF THE LANHAM ACT (15 U.S.C. §1125(d))
(Against Defendant Numbers 32 and 33 only)

61.     Tiffany hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

62.     At all times relevant hereto, Tiffany has been and still is the owner of the rights, title and interest in and to the Tiffany Marks.

63.     The Cybersquatting Defendants have acted with the bad faith intent to profit from the Tiffany Marks and the goodwill associated with the Tiffany Marks by registering and using the Cybersquatted Subject Domain Names.

64.     The Tiffany Marks were distinctive and famous at the time the Cybersquatting Defendants registered the Cybersquatted Subject Domain Names.

65.     The Cybersquatting Defendants have no intellectual property rights in or to the Tiffany Marks.

66.     The Cybersquatted Subject Domain Names are identical to, confusingly similar to, or dilutive of at least one of the Tiffany Marks.

67.     The Cybersquatting Defendants' conduct is done with knowledge and constitutes a willful violation of Tiffany's rights in the Tiffany Marks. At a minimum, the conduct of these Defendants constitutes reckless disregard for and willful blindness to Tiffany's rights.

68.     The Cybersquatting Defendants' actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

69.     Tiffany has no adequate remedy at law.

70.     Tiffany has suffered and will continue to suffer irreparable injury and damages due to the above-described activities of the Cybersquatting Defendants if the Cybersquatting Defendants are not preliminary and permanently enjoined.

## COUNT IV – COMMON LAW UNFAIR COMPETITION

71.     Tiffany hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

72.     This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing and/or using marks that are virtually identical to one or more of the Tiffany Marks in violation of Florida's common law of unfair competition.

73.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing and/or using counterfeits and infringements of at least one or more of the Tiffany Marks. Defendants are also each using counterfeits and infringements of one or more of the Tiffany Marks to unfairly compete with Tiffany and others for (i) space in

search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

74.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among the consumers as to the origin and quality of Defendants' e-commerce stores and websites as a whole and all products sold therein by their use of the Tiffany Marks.

75.     Tiffany has no adequate remedy at law and is suffering irreparable injury and damages because of Defendants' actions. Moreover, Defendants are unjustly profiting from those actions.

## COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

76.     Tiffany hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

77.     Tiffany is the owner of all common law rights in and to the Tiffany Marks.

78.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using one or more of the Tiffany Marks.

79.     Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of the Tiffany Marks.

80.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using the Tiffany Marks.

81.     Tiffany has no adequate remedy at law and is suffering damages and irreparable injury because of Defendants' actions. Moreover, Defendants are unjustly profiting from those actions.

**PRAYER FOR RELIEF**

82.     WHEREFORE, Tiffany demands judgment on all Counts of this Complaint and an award of equitable relief, and monetary relief against Defendants as follows:

a.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65, enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Tiffany Marks; from using the Tiffany Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Tiffany; from falsely representing themselves as being connected with Tiffany, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Tiffany; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Tiffany Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent

Defendants' goods as being those of Tiffany, or in any way endorsed by Tiffany and from offering

such goods in commerce; from engaging in search engine optimization strategies using colorable

imitations of Tiffany's name or trademarks; and from otherwise unfairly competing with Tiffany.

        b.    Entry of a temporary restraining order, as well as preliminary and

permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent

authority, enjoining Defendants and all third parties with actual notice of an injunction issued by

the Court from participating in, including providing financial services, technical services or other

support to, Defendants in connection with the sale and distribution of non-genuine goods bearing

and/or using counterfeits and/or infringements of the Tiffany Marks.

        c.    Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. §1651(a), The

All Writs Act, and the Court's inherent authority that upon Tiffany's request, the Defendants and

the top level domain (TLD) Registry for each of the Subject Domain Names or their administrators,

including backend registry operators or administrators, place the Subject Domain Names, and any

other domains names being used and/or controlled by Defendants to engage in the business of

marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and

infringements of the Tiffany Marks,  on Registry Hold status for the remainder of the registration

period for any such domain name, thus removing them from the TLD zone files which link the

Subject Domain Names and any other domain names used and/or controlled by Defendants, to the

IP addresses where the associated websites are hosted.

        d.    Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and

the Court's inherent authority canceling for the life of the current registration or, at Tiffany's

election, transferring the Subject Domain Names and any other domain names used by Defendants

to engage in their counterfeiting of the Tiffany Marks at issue to Tiffany's control so they may no longer be used for unlawful purposes.

      e.    Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agents or assigns, to assign all rights, title, and interest, to their Subject Domain Names and any other domain names used by Defendants to Tiffany and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

      f.    Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring each Defendant, its agents or assigns, to instruct all search engines to permanently delist or deindex the Subject Domain Names and any other domain names used by Defendants, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

      g.    Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Tiffany's request, the applicable governing messaging service and Internet marketplace and social media website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, disable and/or cease facilitating access to the Seller IDs and any other alias e-commerce stores, seller identification names, user names, and private messaging accounts, being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and infringements of the Tiffany Marks.

h.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Tiffany's request, any messaging service and Internet marketplace and social media website operators and/or administrators, registrar and/or top level domain (TLD) Registry for the Seller IDs and Subject Domain Names who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID or Subject Domain Name.

i.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act,  and this Court's inherent authority that, upon Tiffany's request, any messaging service, Internet marketplace, and social media website operators and/or administrators, who are provided with notice of an injunction issued by the Court permanently remove from the multiple platforms, which include, *inter alia*, a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Tiffany Marks via the e-commerce stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the "parent" and/or "child" Amazon Standard Identification Numbers ("ASIN") on Schedule "A," and upon Tiffany's request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Tiffany Marks associated with and/or linked to the same sellers or linked to any other alias e-commerce stores, seller identification names, user names, and private messaging accounts being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the Tiffany Marks.

j.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority, that, upon Tiffany's

request, Defendants and any Internet marketplace, and social media website operators and/or administrators who are provided with notice of an injunction issued by the Court, immediately cease fulfillment of and sequester all goods of each Defendant bearing and/or using one or more of the Tiffany Marks in its inventory, possession, custody, or control, and surrender those goods to Tiffany.

k. Entry of an order requiring, upon Tiffany's request, Defendants to request in writing permanent termination of any messaging services, Seller IDs, usernames, e-commerce stores, and social media accounts they own, operate, or control on any messaging service, e-commerce marketplace platform, and social media website.

l. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Tiffany to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits, and/or infringements of the Tiffany Marks.

m. Entry of an order requiring Defendants to account to and pay Tiffany for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Tiffany be trebled, as provided for under 15 U.S.C. §1117, or, that Tiffany be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

n. Entry of an order requiring Defendant Numbers 32 and 33 to account to and pay Tiffany for all profits and damages resulting from those Defendants' cybersquatting activities

and that the award to Tiffany be trebled, as provided for under 15 U.S.C. § 1117, or that Tiffany be awarded statutory damages from Defendant Numbers 32 and 33 in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. § 1117(d) of the Lanham Act.

   o. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Tiffany's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

   p. Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Tiffany's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs and Subject Domain Names or other alias e-commerce stores, social media accounts, seller identification names, user names, private messaging accounts, domain names, and/or websites, used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Tiffany in partial satisfaction of the monetary judgment entered herein.

   q. Entry of an award of pre-judgment interest on the judgment amount.

   r. Entry of an order requiring Defendants to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

        s.      Entry of an order for any further relief as the Court may deem just and proper.

DATED: July 11, 2022.        Respectfully submitted,

        STEPHEN M. GAFFIGAN, P.A.

        By:  **Stephen M. Gaffigan**
        Stephen M. Gaffigan (Fla. Bar No. 025844)
        Virgilio Gigante (Fla. Bar No. 082635)
        T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
        Christine Ann Daley (Fla. Bar No. 98482)
        401 East Las Olas Blvd., Suite 130-453
        Ft. Lauderdale, Florida 33301
        Telephone: (954) 767-4819
        E-mail: Stephen@smgpa.net
        E-mail: Leo@smgpa.net
        E-mail: Raquel@smgpa.net
        E-mail: Christine@smgpa.net

        Attorneys for Plaintiff TIFFANY (NJ) LLC

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**